Luis F. Balaguer, demandante y apelante, *v.* F. R. Villavicencio, demandado y apelado.

Núm. 7358.—*Sometido:* Enero 12, 1938. *Resuelto:* Febrero 18, 1938.

*Henry G. Molina y Santiago de la Fuente,* abogados del apelante; *Juan Valldejuli Rodríguez,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Se trata en este caso de una acción para obtener la posesión de cierto automóvil. Obtenida provisionalmente de acuerdo con la ley que regula este procedimiento y vistos después en la corte inferior los méritos del caso, recayó sentencia por la que se declara sin lugar la demanda, se ordena la devolución al demandado del automóvil objeto del litigio, y se imponen las costas al demandante.

Alega el demandante apelante ser dueño del referido automóvil de cuya posesión le ha privado el demandado a virtud de una orden dictada por la Corte de Distrito de San Juan en el pleito número 22,159, sobre reclamación y entrega de bienes muebles, seguido por F. R. Villavicencio contra Fidela Trilla.

Negó el demandado los hechos esenciales de la demanda y adujo como defensas especiales, entre otras, que obtuvo el mencionado carro de Ochoa Fertilizer Corporation y lo cedió en venta condicional a Fidela Trilla, contra quien hubo de instar el pleito número 22,159 a que se refiere el demandante, el cual fué resuelto por transacción mediante la entrega del carro y devolución a la compradora de parte del precio de venta; que si en algún momento el demandante tuvo la posesión material del referido automóvil, era ésta ilegal y contraria a sus deseos.

■ Por el primer señalamiento el demandante le imputa a la corte sentenciadora error manifiesto en la apreciación de la evidencia.

No encontramos que se cometiera dicho error. La corte inferior llegó a las únicas conclusiones tanto de hecho como de derecho a que podía llegar después de un análisis sereno de la evidencia aportada en el juicio y de la ley que le es aplicable. Juzgamos correctas las siguientes manifestaciones que aparecen en la opinión emitida por el juez que presidió en la vista de este pleito:

"No hemos de ser tan cándidos que creamos en su totalidad la historia que nos hace López ni tampoco la que relata Balaguer, pero sí hemos de declarar que si bien uno ni otro dicen toda la verdad, es indiscutible que en la manera de adquirir Balaguer existe algo inmoral e ilegal que no ha salido a la superficie, pero impide que él haya adquirido un título justo, que sea dueño por lo menos del automóvil en cuestión, única propiedad que está en controversia en este litigio."

Más aún. Asumiendo que la corte inferior se hubiese equivocado al negarle crédito a Balaguer, el error no sería tan manifiesto que implicara la revocación de la sentencia. Aceptando como cierta su declaración y probada la teoría de su caso, ni de una ni de otra ni de ambas surge un derecho a su favor sobre el automóvil que ha motivado este pleito. La corte *a quo* resume la declaración que prestó ante ella como testigo de sí mismo, el día de la vista. Estamos de acuerdo con ese resumen, que transcribimos textualmente por considerarlo necesario a la discusión de otros errores. Dice así el juez sentenciador:

"La historia que nos hace Balaguer no es menos fantástica que la que nos relata López. Declaró Balaguer que cierta persona allegada a él le insinuó que comprara el automóvil y las joyas de López porque éste tenía que embarcarse, y como la Sra. de Balaguer se hallaba a la sazón en la quinta de Aibonito, invitó a López para que fuera hasta allá donde cerrarían el negocio, para que la Sra. Balaguer tuviese una oportunidad de ver si le gustaban las alhajas, pues para ella las compraba. Que se encontraron en Caycy, allí comió López y tomó café Balaguer y juntos siguieron hasta la quinta del demandante en Aibonito, donde se hallaba su esposa enferma. Que al llegar a la quinta se bajaron del automóvil, observando luego la esposa de Balaguer que López había dejado el automóvil con el motor caminando, tal y como si estuviera preparado para salir rápidamente en cualquier momento que lo necesitara. Que al penetrar en la casa bajó la Sra. Balaguer y en el comedor López sacó las joyas y convenido el precio, exigió el vendedor que le pagasen en billetes (no quería cheques), y después que hubo recibido el precio y firmado López el documento *exhibit* L del demandante, la esposa fué para la cocina a prepararles café, y en ese instante López sacó el revólver o pistola y amenazando con ella a los presentes, les exigió la devolu-

ción de las prendas, reteniendo él, desde luego, el precio que ya había recibido. En ese momento aparece en escena la Sra. Balaguer y apuntando con una pistola a López le obligó a deponer su actitud, y dominado por los presentes pide perdón y suplica que no lo denuncien. Balaguer y sus compañeros se conforman y acceden a las súplicas de López, pero lo conducen a Aibonito para que el documento *exhibit* L del demandante, antes transcrito, sea firmado también por otros testigos no relacionados con Balaguer. En Aibonito son vistos por el policía Manuel Ortiz, cuya declaración nos merece entero crédito. Declaró este policía que vió llegar a López, a Balaguer y a otra persona, y que pararon frente a un cafetín llamado 'El Dragón Rojo.' Que llegaron en un automóvil Graham Paige entre 10 y 11 de la noche del 21 de diciembre del año pasado, y llamaron al dueño del cafetín, Sr. González, suplicándole Balaguer que le recomendase un *chauffeur* de confianza para traer a López a San Juan. Le recomendaron un *chauffeur* que tenía un carro público, y luego Balaguer le dijo al mismo González que necesitaba unos testigos para firmar un documento en que constaba la compra a López de un automóvil. Esto lo dijo Balaguer al alcance del oído de López. Cuando los testigos estaban listos para firmar, González exigió que firmase López, y éste que se había quedado en el automóvil gritó 'Pueden ustedes firmar, que ya yo firmé y recibí el dinero.' Se firmó entonces el documento y López salió para San Juan en el automóvil público que se le había recomendado.

"Declaró Balaguer que él no examinó los records del Negociado de Automóviles para investigar si en efecto López era el dueño del vehículo. Tampoco hizo examinar las joyas por un experto para ver si eran legítimas hasta unos días después, que las mostró al señor Emilio Bouret, joyero de esta ciudad. Que el precio de compra se pagó en billetes de banco, y que parte del precio, unos $600.00, más o menos, los tenía su esposa procedentes de economías que tenía ella, y el resto los llevó Balaguer.''

Repetimos, que aun aceptando como cierta esa declaración, siempre nos veríamos obligados a resolver que Balaguer no adquirió de Providencio López título alguno, porque éste no podía transmitirle lo que no tenía. El apelante sostiene lo contrario en el segundo error que le atribuye al juez sentenciador, en el que éste no incurrió, a nuestro juicio, por las siguientes razones.

■ El demandado probó que el día 2 de octubre de 1934 vendió a Fidela Trilla un automóvil Graham Paige, licencia núm. 1721, por el precio de $711, de los cuales pagó en forma que aparece de la orden firmada por ella y presentada por el demandado en evidencia, $611, suscribiendo por el balance cinco pagarés de un valor de $22.20 cada uno, que también fueron ofrecidos y admitidos en evidencia. La transferencia de Villavicencio a Fidela Trilla así como otra anterior de Ochoa Fertilizer Corporation a Villavicencio no fueron inscritas en el Departamento del Interior hasta el 31 de diciembre de 1934, por lo que hasta esa fecha, y a pesar de que desde el día 2 de octubre de 1934 había pasado por compra de manos de Villavicencio a las de Fidela Trilla, el automóvil aparecía en el Negociado de Automóviles del Departamento del Interior inscrito a favor de la dueña original, Ochoa Fertilizer Corporation. Si el demandante hubiese acudido a dicho negociado antes de adquirir el automóvil, hubiera visto que Providencio López no era dueño ni tenía título alguno sobre dicho vehículo. La posesión que del automóvil tenía López no era suficiente en derecho para establecer un título a su favor y en contra del verdadero dueño, Villavicencio. Balaguer compró a su riesgo y no adquirió título alguno sobre el automóvil objeto de la venta porque su vendedor no tenía título alguno que pudiera trasmitirle legalmente. Véanse: *García et al.* v. *Savino et al.,* 19 D.P.R. 279, y *García et al.* v. *Suro et al.,* 19 D.P.R. 755.

■ El hecho de que el contrato de venta condicional no se inscribiera sino hasta después de haber transcurrido cinco días de la venta a Balaguer no tiene importancia alguna en este caso. Uno de los propósitos que persigue la ley al proveer para la inscripción de los contratos de venta condicional de bienes muebles es el de proteger al comprador de buena fe contra la venta que pudiera hacerle un mero poseedor de dichos bienes muebles, sin título legal sobre los mismos. La falta de inscripción tendría importancia si el título que Balaguer alega tener le hubiese sido conferido por

uno de los anteriores dueños, Fidela Trilla u Ochoa Fertilizer Corporation.

El tercero de los errores debe también ser desestimado. Dice el apelante que erró la corte al resolver que la nulidad de los procedimientos seguidos por Villavicencio para recuperar el automóvil que se hallaba en poder de Balaguer no favorece al demandante.

La corte no resolvió que el procedimiento seguido por Villavicencio fuera nulo. Admitió la posibilidad, pero no la resolvió. En la opinión que escribió se expresa así:

"Quizás sea nulo el procedimiento seguido por Villavicencio para recuperar el automóvil que se hallaba en poder de Balaguer, pero a nuestro juicio la nulidad de las actuaciones de Villavicencio no favorece al demandante, quien está obligado a probar por la preponderancia de la evidencia que es dueño o tiene derecho a poseer la propiedad en cuestión."

Por ello, y por los fundamentos enunciados al discutir el segundo señalamiento, creemos que también debe desestimarse éste.

*Por las razones aducidas, debe confirmarse la sentencia.*
El Juez Asociado Señor Córdova Dávila no intervino.